SIMONS *v.* ROOD.

1. Tax Titles—Acquisition by Contract Purchaser.

A contract purchaser of land, taking subject to an existing mortgage, occupies the position of mortgagor as to the vendor and existing mortgagee, and cannot, as against them, acquire title by purchase at a tax sale, though for taxes that accrued before he received his contract.

2. Same—Husband and Wife.

A tax title acquired by a husband on land owned by his wife is void, not only as to the wife, but as to her grantees and mortgagees.

Error to Mecosta; Palmer, J. Submitted December 11, 1901. Decided January 28, 1902.

Ejectment by Laura S. Simons against Laura Rood and Dearborn Rood. From a judgment for defendants, plaintiff brings error. Reversed.

*Edwin H. Lyon,* for appellant.

*Frank Dumon,* for appellees.

HOOKER, C. J. The plaintiff brought ejectment, and was defeated, the judge filing a finding of fact and law, whereupon she removed the cause to this court by writ of error. The finding shows that on October 28, 1890, the owner, Moore, gave two mortgages upon the premises,— a first mortgage of $800 and a second of $24,—both to the same mortgagee, the Michigan Mortgage Company; the second being on its face made subject to the first. In April, 1891, the first mortgage was assigned to Seymour. On February 6, 1892, the Michigan Mortgage Company obtained a sheriff's deed on foreclosure of the second mortgage, subject to the first mortgage. On October 20, 1893, the Michigan Mortgage Company sold the land upon contract to Laura Rood for $1,200, payment being defer-

red; promising upon performance by her to give to her a warranty deed of the premises, subject to the taxes to be assessed for and after the year 1893, and said first mortgage, and to give her immediate possession of the premises. On December 4, 1893, Dearborn Rood, the husband of Laura Rood, bought the premises at delinquent tax sale for the taxes of 1891. On February 9, 1894, the affairs of the Michigan Mortgage Company went into the hands of Vaughan, Fedewa, and Lyon, receivers. In April, 1894, the Roods moved upon the premises, and remained there until after November 21, 1894. In November, 1894, Dearborn Rood received a letter from the attorneys of Frances E. Seymour:

"LAW OFFICE OF LYON & DOOLING.
                "ST. JOHNS, MICH., Nov. 21, 1894.
"DEARBORN ROOD, Esq.,
        "Blanchard, Mich.
    "*Dear Sir:* We are advised that you became the purchaser at a tax sale of the east half of the southeast quarter of section one, Tp. 13 north, of R. 8 W., in Michigan, —being known as the Moore 80 acres,—and which land we understand was sold to your wife by the Michigan Mortgage Company, Limited, of this place. We write you as attorneys for Mrs. F. E. Seymour, the owner of the mortgage upon that place. We want to know if you intend to insist upon your tax purchase as a title to the land adverse to Mrs. Seymour. If you do, or if you do not, advise us of the same, because, if you do insist upon it as a claim adverse to Mrs. Seymour, we will redeem for her before the first of December. If you pursue that course, and insist upon your tax interest, we shall have Mrs. Seymour immediately commence foreclosure on her mortgage. An early reply will greatly oblige,
                    "Very truly yours,
                        "LYON & DOOLING."

Upon the receipt of this letter dated November 21, 1894, and before December 3, 1894, the Roods removed from the premises and abandoned the premises, taking up their residence in the adjoining township. This land was on the east side of section 1. On December 3, 1894, Dearborn Rood purchased the land at delinquent tax sale for

the taxes of 1892. On January 15, 1895, Dearborn Rood obtained an auditor general's deed of the premises for his purchase for the taxes of 1891. On April 25, 1895, the Roods moved back upon the premises, claiming to take possession under the tax title acquired by Dearborn Rood. On May 13, 1895, Seymour obtained a sheriff's deed on foreclosure of her $800 mortgage. On May 31, 1895, Vaughan, Fedewa, and Lyon, as receivers, gave a receivers' deed of the premises to Seymour. Dearborn Rood received auditor general's deeds as follows: On January 25, 1896, for the tax of 1892; January 15, 1897, for the tax of 1893; April 25, 1898, for the tax of 1894. On May 30, 1900, Seymour quitclaimed her interest to the plaintiff. No notice was given of such removal or return to the vendor.

By contract with the Michigan Mortgage Company, Mrs. Rood acquired an equitable title in these lands, and the vendor held the legal title in trust for her, but coupled with an interest by way of security. It was in effect a mortgage, and she mortgagor. See *Bowen* v. *Lansing, ante,* 117 (88 N. W. 384), and cases cited. As such mortgagor she could not acquire an adverse title, which should cut off her mortgagee, by acquiring an interest through a purchase of the lands at delinquent sale for unpaid taxes, whether the taxes accrued before or after the time that she made her contract. The tax of 1891 was a lien upon the premises when she took them. In *Lacey* v. *Davis,* 4 Mich. 140 (66 Am. Dec. 524), this was held to preclude one taking title from asserting an adverse claim under a tax deed based on such a tax in any case; and while this rule is questioned, as too broad, in the case of *Blackwood* v. *Van Vleit,* 30 Mich. 118, that case seems to recognize the rule that one cannot assert such a title where it was his duty to the State to pay the tax, or where it would be inequitable as between him and the holder of the existing title. It is said in that case:

" It was not claimed in this case, so far as the record shows, that there were contract or other relations between

Blackwood and Van Vleit that would preclude the latter from buying the former's land for delinquent taxes."

In the case of *Sands* v. *Davis*, 40 Mich. 19, language is used which may seem to justify the conclusion that one may assert such a title, but it will be seen by an examination that it was put upon the ground that such vendee had no duties to perform towards the vendor, and certainly none as to the vendor's co-tenants; and the writer of the opinion ( Mr. Justice Campbell) was careful to add:

"If Sands had gone into possession by the aid of the other tenants, *or in recognition of their rights*, he might in that way, perhaps, have incurred some duties towards them.    But he went in as a stranger to their claims, under a claim which denied their existence or validity." [1]

In the present case the Roods not only took possession under a title they now attempt to deny, but under no other title; and, furthermore, they did so under a solemn contract that Mrs. Rood should pay $1,200, and that the vendor should hold the legal title in trust until it should be paid, and that such title should be subject to the outstanding $800 mortgage.    In the case of *Horton* v. *Ingersoll*, 13 Mich. 409, it was held that a tax title obtained by a mortgagee could not be used to cut off the mortgagor's title, or that of a prior mortgagee, because the taxes were as much a charge upon one interest as the other, and the purchase simply inured to the protection, and not the destruction, of the regular title. [2]    See *Jeffery* v. *Hursh*, 45 Mich. 59 (7 N. W. 221); *Taylor* v. *Snyder*, Walk. Ch. 490; *Connecticut Mut. Life Ins. Co.* v. *Bulte*, 45 Mich. 113 (7 N. W. 707); *Farmers', etc., Bank* v. *Bronson*, 14 Mich. 361; *Bertram* v. *Cook*, 32 Mich. 518; *Richards* v. *Richards*, 75 Mich. 408 (42 N. W. 954); *Wolf* v. *Holton*, 92 Mich. 136 (52 N. W. 459); *Fells* v. *Barbour*, 58 Mich. 49 (24 N. W. 672); *Watkins* v. *Green*, 101 Mich. 493

[1] *Sleight* v. *Roe*, 125 Mich. 585 (85 N. W. 10), and *Ream* v. *Robinson*, 128 Mich. 92 (87 N. W. 115), are recent cases bearing on the rights and duties of co-tenants.

[2] See, also, *Porter* v. *Corbin*, 124 Mich. 201 (82 N. W. 818).

(60 N. W. 44); *Defreese* v. *Lake,* 109 Mich. 428 (67 N. W. 505, 32 L. R. A. 744, 63 Am. St. Rep. 584).

There are many cases which hold that a tenant in possession cannot assert a title under a tax deed without a surrender of the premises. That is recognized by counsel in this case, but he insists that there is no impediment here, because the defendants abandoned the premises, and the court so found. We doubt if the parties did in good faith abandon the premises; but, if they did, the rule applicable to this case is broader than that. It does not rest on the relation of landlord and tenant, but on privities of contract and title which have raised equities that forbid Mrs. Rood to acquire a tax title against any one who stands in the relation of mortgagee to her. In the case of *Defreese* v. *Lake, supra,* there is a discussion of this principle; and in *Fells* v. *Barbour, supra,* it was held that an execution purchaser's grantee is in such privity with the defendant in the execution that he cannot assert a title by adverse possession against a mortgagee of the execution debtor based upon a tax title procured after his purchase; it being held that "the purchase of bids at a tax sale operates as a payment of the taxes, so far as a previous mortgagee of the land, or his assignee, is concerned." Under this rule a purchase by Laura Rood would have inured as a payment, by reason of her contract relations, whether she was in or out of possession, and whether it was made before or after she took possession, inasmuch as it was after she made her contract of purchase. The thin disguise of having these purchases made and deeds taken in the name of her husband will not affect the matter. It is inequitable for a husband to acquire title to the wife's premises by obtaining tax titles upon them. As to her, at least, they would be void. So, also, should they be as to her grantees or mortgagees, under circumstances like these. *Ward* v. *Nestell,* 113 Mich. 187 (71 N. W. 593); *Hubbard* v. *Shepard,* 117 Mich. 27 (75 N. W. 92, 72 Am. St. Rep. 548); *Laton* v. *Balcom,* 64 N. H. 95 (6 Atl. 37, 10 Am. St. Rep. 381). If there was not collusion between

the Roods in acquiring the title, Dearborn Rood paid the taxes for her; and in such case, or if the purchase was collusive, it was a fraudulent taking color of title, merely.

The judgment is reversed, and a judgment will be entered here in favor of the appellant, with costs of both courts, and the case will be remanded for further proceedings.

MOORE, GRANT, and MONTGOMERY, JJ., concurred. LONG, J., took no part in the decision.